IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| DEREK A. MILLER, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 7:17-cv-00555 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HAROLD CLARKE, | ) | United States District Judge |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Petitioner Derek A. Miller, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2014 conviction and sentence imposed by the Rockingham County Circuit Court. This matter is before the court on respondent's motion to dismiss. After reviewing the record, the court grants respondent's motion and dismisses the petition.

I. BACKGROUND

**A. Underlying Conduct**

On the afternoon of July 24, 2013, while driving on a two-lane road in a no-passing zone, Miller passed multiple cars at a speed of at least 80 mph in Rockingham County. Miller began to fishtail and hit another car head-on. The victim died at the scene. Miller smelled of alcohol; admitted to drinking three beers that afternoon; and had bloodshot, glassy eyes and slurred speech. Miller was on probation at the time and was charged with aggravated involuntary manslaughter, driving while intoxicated (DUI), and driving on a revoked license.

**B. Trial Court**

On April 30, 2014, pursuant to a written plea agreement, Miller pled guilty to involuntary

manslaughter and probation violations[1] in exchange for the reduction from aggravated involuntary manslaughter and *nolle prosequi* of the DUI and driving on a revoked license charges.[2] The Plea Form noted that there was no agreement as to sentences, and, by signing it, Miller averred that no one "ha[d] made any promises to [him] that [he] would receive a lighter sentence or probation if [he] would plead guilty." Miller also confirmed to the court that there was no agreement regarding his sentence. Miller stated, under oath, that he fully understood the amended charge against him and that he had discussed the charge, its elements, and possible defenses with counsel. Miller told the court that he and counsel had discussed his potential pleas and that he had decided for himself, freely and voluntarily, to plead guilty because he was guilty. Miller confirmed that he understood that his conviction could cause the revocation of any suspended sentences and various collateral consequences. And he affirmed that no one had threatened or forced him to plead guilty and that no one had made any promises to induce his guilty plea. Regarding the Plea Form, Miller stated that he had read and understood "every single word" of the agreement and discussed it and its consequences with counsel. Miller specifically confirmed that he understood the range of punishment for the charge, described in the Plea Form as: "My attorney has advised me that the maximum punishment which the law provides for this offense is . . . up to 10 years incarceration, or up to 12 months incarceration and/or a $2500 fine." Miller also told the court that he had discussed the sentencing guidelines with counsel and that he understood that the court was not required to follow those guidelines.

The Commonwealth of Virginia then proffered that it would have offered additional testimony that Miller's blood alcohol content was .08 at approximately one hour and fifteen

---

[1] The two probation violations were related to Miller's previous convictions for violating a protective order and possessing marijuana.

[2] Miller initially had a jury trial on the original three charges against him but, in the middle of the trial, decided to plead guilty.

minutes after the accident, which extrapolated to approximately .11 or .12 when he struck the victim's car. Further evidence would have shown that Miller was on Depakote,[3] Buspirone,[4] and Cymbalta,[5] which amplified the effects of the alcohol in his system. Miller specifically agreed to the Commonwealth's evidence and its sufficiency.

The trial court found the evidence sufficient to convict Miller and further found that his plea was freely, voluntarily, and intelligently made with an understanding of the nature of the charge and the consequences of his guilty plea and plea agreement. Accordingly, the court accepted the plea agreement and found Miller guilty.

At sentencing, Miller admitted that he understood how dangerous it was to combine his psychiatric prescriptions "with even a drop of alcohol." He admitted that on the day of the crash, he disobeyed his doctor's order by drinking after taking his medications. He also admitted that he had drunk more, later into the afternoon, than he had previously admitted to the police.

The Commonwealth argued that the guidelines did not take into account Miller's speed, reckless passing, or suspended driver's license. It also noted Miller's prior DUI conviction, his significant criminal record, and discrepancies in Miller's testimony (at sentencing and the presentence investigation report) regarding his guilt and remorse. Finally, the Commonwealth noted that the victim's family did "not want a guidelines sentence. They want[ed] the full amount of time."

---

[3] Depakote is a medication used to treat seizure disorders and manic episodes related to bipolar disorder, and to prevent migraine headaches. Drugs.com, *Depakote*, https://www.drugs.com/depakote.html (last visited April 16, 2019).

[4] Buspirone is a medication used to treat symptoms of anxiety. Drugs.com, *Buspirone*, https://www.drugs.com/buspirone.html (last visited April 16, 2019).

[5] Cymbalta is a medication used to treat depression and anxiety and to help relieve nerve pain. Drugs.com, *Cymbalta*, https://www.drugs.com/cymbalta.html (last visited April 16, 2019).

In sentencing Miller, the court deviated upward from the sentencing guidelines. It noted that Miller had never successfully completed probation or parole connected to his thirty-two prior misdemeanors; that his future risk assessment "just about maxed [the scale] out"; that Miller had a "stop snitching" tattoo; and that Miller had refused to comply with his medication regimen and compounded that failure by drinking alcohol. On July 18, 2014, the court sentenced Miller to ten years of incarceration on the involuntary manslaughter conviction and a total of two years and ten months on the probation violations.

**C. Direct Appeals**

On appeal, Miller argued that the "trial court erred in sentencing [him] to a term of [twelve years and ten months] upon his conviction and probation violations." The Court of Appeals denied the appeal after it determined that the sentences were not an abuse of discretion because they were within the legal sentencing range. The Supreme Court of Virginia refused Miller's petition for appeal on November 6, 2015, and refused rehearing on February 5, 2016.

**D. State Habeas Petition and Appeal**

On April 25, 2016, Miller filed a petition for writ of habeas corpus in the Rockingham County Circuit Court, alleging that he was "[d]enied due process in violation of [his] Fourteenth Amendment right to the United States Constitution, to wit: guilty plea was not voluntary, as it was not knowingly and intelligently made due to the misadvise/misinformation of counsel regarding the plea agreement and sentence, that [Miller] relied on in deciding to plead guilty." In his petition, Miller indicated that he was only challenging his plea as to the involuntary manslaughter conviction. The circuit court dismissed his petition, and the Supreme Court of Virginia subsequently denied his petition for appeal on May 23, 2017.

4

**E. Federal Habeas Petition**

Miller filed the instant habeas petition on November 28, 2017, *see* R. Gov. § 2254 Cases 3(d) (describing the prison-mailbox rule), raising the same claim that he raised in his state court habeas. Unlike in his state habeas petition, however, it appears from his federal habeas petition that Miller is challenging both his involuntary manslaughter conviction and his probation violations.

## II. DISCUSSION

**A. Probation Violations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has a one-year period of limitation to file a federal habeas corpus petition. This statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, Miller alleges nothing to support application of § 2244(d)(1)(B)-D). Under § 2244(d)(1)(A), Miller's conviction became final on May 5, 2016, when his time to file a petition for writ of certiorari to the Supreme Court of the United States expired.

Section 2244(d)(2) tolls the federal limitation period during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). An application for post-conviction review or other state collateral proceeding is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005). Miller's state habeas petition did not challenge his probation violations. Accordingly, Miller's state habeas petition afforded him no statutory tolling regarding the probation violations. Accordingly, the petition is time-barred to the extent is challenges his probation violations, unless Miller demonstrates that he is actually innocent of his convictions, *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), or that the court should equitably toll the statute of limitations,[6] *Rouse v. Lee*, 339 F.3d. 238, 246 (4th Cir. 2003).

Miller does not allege that he is actually innocent of his probation violations or that the statute of limitations should be equitably tolled as to these convictions. Accordingly, the court concludes that Miller's habeas petition is untimely as to his probation violations.

## B. Involuntary Manslaughter

Miller's challenge to his involuntary manslaughter conviction, however, is both timely filed[7] and exhausted.[8] Miller alleges that his guilty plea was not knowing and voluntary because

---

[6] A district court may apply equitable tolling only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d. 238, 246 (4th Cir. 2003) (citing *Harris*, 209 F.3d at 330). The petitioner must demonstrate that some action by the respondent or "some other extraordinary circumstance beyond his control" prevented him from complying with the statutory time limit, despite his exercise of "reasonable diligence in investigating and bringing the claims." *Harris*, 209 F.3d at 330 (citing *Miller v. N.J. State Dep't of Corrs.*, 145 F.3d 616, 618 (3d Cir. 1998)). An inmate asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). Generally, the petitioner is obliged to specify "'the steps he took to diligently pursue his federal claims.'" *Id.* at 930 (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)).

[7] Miller's conviction became final on May 5, 2016. His properly filed state habeas petition challenging his involuntary manslaughter conviction statutorily tolled the limitations period from April 25, 2016, to May 23, 2017.

6

counsel provided ineffective assistance. Specifically, Miller claims that counsel advised him "that he had no defense in spite of his medication issues" and "that the Commonwealth Attorney offered not to contest the recommended sentencing guidelines." He further alleges that he pled guilty believing that he would be sentenced within the guideline range and that the judge had "been made aware of and agreed to." The Rockingham County Circuit Court adjudicated and rejected these claims, finding that they failed under *Anderson v. Warden*, 281 S.E.2d 885 (Va. 1981),[9] and *Strickland v. Washington*, 466 U.S. 668 (1984).[10] The court finds that the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law and did not result in a decision that was based on an unreasonable determination of the facts. Accordingly, the court will dismiss Miller's claims.

When reviewing a habeas claim that has been adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." §§ 2254(d)(1), (d)(2). A state court's adjudication is

---

Therefore, approximately six months of the statute of limitations ran before Miller filed his federal habeas petition on November 28, 2017.

[8] "[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In Virginia, a non-death row felon ultimately must present his claims to the Supreme Court of Virginia and receive a ruling from that court before a federal district court may consider his claims. *See* Va. Code § 8.01-654. In this case, Miller has presented his challenge to his involuntary manslaughter conviction to the Supreme Court of Virginia.

[9] A defendant's representations as to the voluntariness of his guilty plea and the adequacy of counsel "will be considered conclusively established by the trial proceedings, unless the prisoner offers a valid reason why he should be permitted to convert his prior statements. *Anderson*, 281 S.E.2d at 888.

[10] In denying Miller's petition for appeal, the Supreme Court of Virginia, in effect, adjudicated Miller's claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Thomas v. Davis*, 192 F.3d 445, 453 n.6 (4th Cir. 1999).

7

considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. *Id.* at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. *Id.* at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." § 2254(e)(1).

In order to establish a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. There is a strong presumption that an attorney is acting reasonably. *Id.* at 688-89. To establish prejudice to his defense, a petitioner must demonstrate that but for his attorney's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Conclusory assertions in the pleadings that Miller would not have pled guilty if he had received better assistance from counsel are not dispositive of the issue. *See*

*United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59-60). The court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369-70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

      The state court found Miller's claims to be meritless and wholly belied by his sworn statements during his plea colloquy. With regard to his claim that counsel failed to advise him that he had some unspecified defense regarding "medication issues," the court found that Miller told the court, both before jury selection and during his plea colloquy, that he had discussed all potential defenses. Further, the court found that Miller failed to establish any prejudice from counsel's alleged ineffective assistance because he "failed to proffer that he had a viable defense involving "medication issues." Instead, the court found that the existence of a defense was belied by the evidence against him, to wit: Miller was legally intoxicated even without the exacerbating effect of his medication. Miller's psychiatric medications were known by all parties and the court at the time of his plea. Further, Miller conceded that he was under doctor's orders not to mix any alcohol with his medication, much less the multiple beers he admitted

9

consuming, and that he chose to drive despite feeling "dizzy and drowsy." Accordingly, the court found "no evidence of any viable defense regarding medication: [Miller] drank to the point of intoxication, knowingly caused a greater danger by mixing alcohol with his medication, and . . . fails to claim that he was insane or incompetent." Because he had no viable defense, the court found that he faced no prejudice by failing to assert it.

Similarly, the state court found Miller's claim that counsel advised him that he would be sentenced within the guidelines was contradicted by his written and sworn statements. Miller acknowledged, in writing, that there was no agreement as to sentencing, that the maximum sentence for his involuntary manslaughter conviction was ten years, that the sentence would be set by the court, and that no promises outside of the plea agreement had been made to him by anyone. The court noted that Miller "repeatedly" told the court that he understood that he faced ten years' imprisonment and that there was no agreement as to the sentence. Despite being given two opportunities to speak at the sentencing hearing, Miller raised no objection when the Commonwealth asked for a maximum sentence or when the court imposed the maximum sentence. In the face of all of this evidence, other than his self-serving statements, Miller proffered no evidence that he believed the Commonwealth would recommend that he be sentenced within the guidelines or that the court would do so. Further, the court found that even if counsel misadvised Miller, despite the evidence contradicting that claim, the court ensured that Miller knew both that it was not bound by the sentencing guidelines and that he faced ten years' imprisonment. Accordingly, the court determined that Miller had accurate information at the time of his decision to plead guilty and, thus, suffered no prejudice. Based on the foregoing, the court determined that Miller's claims failed to establish either prong of *Strickland* and, therefore, dismissed the petition.

Based on the record, the court concludes that the state court's adjudication of Miller's claims was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. Miller has presented no plausible defense regarding "medication issues," and even if counsel had misadvised him regarding the Commonwealth's and/or court's intention regarding the guidelines, it is clear that the court corrected any possible misinformation Miller had received. Miller's conclusory allegation that but for counsel's alleged ineffective assistance, he would not have pleaded guilty and would have insisted on going to trial is insufficient to overcome the representations he made under oath to the trial court, especially considering the substantial sentencing benefits he received from pleading guilty when his aggravated involuntary manslaughter charge was reduced to involuntary manslaughter and two other charges were *nolle prosssed*. Accordingly, the court will dismiss Miller's claims.

### III. CONCLUSION

For the reasons stated, the court will grant respondent's motion to dismiss Miller's § 2254 petition.

An appropriate order will be entered.

Entered: April 18, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge